2-4-3-3-5-4 Cynthia Brown et al. v. David Yost Arguments not to exceed 20 minutes per side Ms. Corcoran for appellants Good afternoon Good afternoon, your honors Chief Judge Sutton and may it please the court My name is Kelsey Brown Corcoran I'm here on behalf of the plaintiffs I'd like to reserve four minutes for rebuttal The summary provision of Section 3519-01 empowers the Attorney General to block ballot initiative proponents from engaging in petition circulation based on the content of the summary the proponents write to communicate with potential signatories about their proposed initiative In enforcing the summary provision against plaintiffs the defendant has inflicted two overlapping but distinct First Amendment injuries on them The first is the defendant's exercise of editorial control over the plaintiff's summary Under Ohio law, petition summaries are written by private citizens and they are used solely by private citizens to communicate with other citizens about why they should support a proposed initiative during the circulation process The summary language has no other use does not appear on the ballot does not appear in any ballot materials and it is not enacted into law That means that the summary is core quintessential political speech about an electoral issue which means it cannot be subject to censorship without satisfying strict scrutiny Plaintiff's second First Amendment injury You're obviously not getting on the ballot next week but are you still trying to get on the ballot for next year? Would next November be the next time you could get on the ballot? Yes, that's correct And is it your intent if you were allowed to start collecting signatures that you would do so? Yes, that's correct If I can ask you another question just with respect to the argument you just made which is pretty much a straight up traditional First Amendment argument about restrictions on speech and presumably you think they're content or viewpoint based and then we would subject that to strict scrutiny Yes I mean, that could be a powerful argument but when I look at your motion for a preliminary injunction in the district court the argument that you actually make there exclusively as far as I can tell and I wanna understand if I'm mistaken is that the actions here violate the First Amendment because under an Anderson verdict framework which is different than what I was just talking about the absence of judicial review imposes a burden that the interest doesn't support it. And so I mean, I hear you on the argument you just made but I don't see how you presented that to the district court before the decision we're reviewing here. As a preliminary injunction stage we were bound by the panel decision in Schmidt v. LaRose which held that when you're talking about a challenge to a pre-circulation review gatekeeping process timely de novo judicial review suffices to alleviate any sort of First Amendment problem. I guess I understand your point there but even so the restriction that you were complaining about was not this sort of seriatim in your view arbitrary denial on shifting grounds. It really was just the absence of timely judicial review. That's the way, I mean, that seems to be the argument you made to Judge Graham before the decision we're reviewing. So I'm not sure respectfully that's quite right. I think you're right what I just articulated about the editorial control over the summary is something that I'll get back to that in a second. The second First Amendment injury that I was going to get to earlier was the idea that the defendant has relied on the summary provision to entirely block the plaintiffs from engaging with voters. I think that does, that is in the preliminary injunction. I'll look while you're talking but there was one concern I had about, it's basically a preservation issue. It's not about the merits of what you just said with the kind of traditional First Amendment. Well, and I would go back to that we were constrained by Schmidt. I think what you see in the panel briefing is again we're focused on Schmidt and the lack of judicial review because that was the way in which we could distinguish this case from Schmidt. And then the panel issued its decision where I think it described both parties as conflating or putting together, I think they called it hybrid Anderson verdict and grant. Go ahead. Well, I do want to address this. I think you're right that the case has evolved over time. Can I ask you about the editorial control point? Is that critical? So imagine at the stage where the AG certifies the truth. Instead, the Ohio regime was, it just gets submitted to the Ohio legislature. And the Ohio legislature just has an up or down vote whether this should go to an initiative. It looks at the summary, it looks at the petition and the vote is really, is this a good idea? Would that violate the First Amendment too? So if the Ohio legislature could block it by majority vote, we don't want this to go. So putting aside that the Ohio- Putting aside the AG's review, just my hypothetical is trying to pinpoint what is the First Amendment problem. And so if it was just majority vote by the legislature, whether this should go to the people after you've submitted your summary, they look at the summary and if they think it's a good idea or not. Would that violate the First Amendment? So it's a hypothetical that puts aside the framework that the Ohio Constitution- Puts aside the AG's review for truth. Well, the Ohio Constitution has the ballot initiative process, which provides- I'm just asking a First Amendment question. Right, okay, so just focusing on the First Amendment, I think that would be different because there you wouldn't be prohibiting the proponents of the initiative from communicating with voters through the primary vehicle petition. Would be able to eliminate the initiative just by majority vote of the legislature and that would prohibit them from communicating in the same way. Nothing prohibits you from communicating, you just can't communicate with the petition language you have in the same way. The Supreme Court said in Grant and ACLF and also in Doe v. Reed that petition circulation is itself a primary vehicle- I would agree with that. For political speech. Talking, so, but the petition itself and whether you have the right to circulate it. Right, so we don't have any, we cannot engage in that sort of communication with voters through petition circulation because the Attorney General is relying on the summary provision to block- But what if the Attorney General just, okay, set aside my hypothetical, what if the Attorney General just, say it was like a governor veto, but they put the veto in the Attorney General's hands and he could actually say, I'm gonna let this petition proceed to get the signatures or I'm not going to, and it wasn't about a review of the summary, it was just about whether I think it's a good idea and he had traditional presidential veto power. And this is a circumstance in which the Ohio Constitution doesn't provide- Yeah, setting aside, it's a hypothetical. I'm just trying to figure out what the First Amendment, if you think there is a First Amendment right to have certain, to have petitions circulated and when it exists and when it is violated. I think what the Supreme Court said in Grant and ACLF and Doe v. Reed is that when you have petition circulation, when you have this sort of valid initiative process, there are First Amendment restrictions on what the government can do to interfere with petition circulation. So would that, so would my, so just any restriction, any limitation on the ability to successfully petition as a First Amendment problem? No, I don't think that's right. I think in your hypothetical, there is no petition circulation. It's not something that happens at all. Well, no, it was the same exact fact pattern. You gathered 1,000 signatures, you got your petition language, you have your summary, you submit it to the AG, and instead of the AG having just the right to approve it or disapprove it based on the accuracy of the language, the AG just has a traditional policymaking role and says, I don't think this should go to the people, so I'm gonna veto it. So I think, okay, I think maybe I'm getting closer to answering your question. If the reason that the Attorney General was vetoing was because he disapproved of the content of the actual proposed amendment, then you would be in the land of the 10th Circuit case, the Walker case, and then the D.C. Circuit Marijuana Police Project where the blocking is happening based on the content of the proposed legislation and not on the basis of the content of the political speech about the ballot initiative. If, on the other hand, in your hypothetical, what the Attorney General was doing was saying, I am going to block you from engaging in petition circulation because I don't like what you're saying about your petition, then you would have a First Amendment problem. But so why? To get to the facts of this case, there were six efforts on the part of your side to draft a summary that would satisfy the Attorney General, and each time the Attorney General said, no, this is not satisfactory to me. And so is this a regulation in effect of your speech or your opponents have argued it's government speech? How do you deal with that? The summary, I think, has to be private speech. It's written by private citizens for the purpose of communicating with other private citizens about the ballot initiative. And so when the Attorney General is blocking the petition circulation from happening, he's doing it based on the content of that summary, which again is written by the plaintiffs. There is no other state in the country that has anything like this in their pre-circulation review process. This really is, it's strict scrutiny twice over. It's content. You used the summary, you had the 1,000 people who signed on to each of these six efforts with each of the six new summaries, and you would use the summary then to get the 400,000 voters to sign the petition to get the petition on the ballot eventually. Yes, I know that Ohio is also the only state that requires that you get 1,000 votes before circulating, which means it's even more of a burden when they have to go back and edit. Yes, that is correct. And for any of the Yarners who live in Ohio, you will eventually see a summary at the ballot, at that stage, that summary is written by the government. The summary that's used in the petition circulation is written by the plaintiffs and it's only used for petition circulation. Are you saying that any gatekeeping function regarding the summary would violate the First Amendment? Is that your position? If the gatekeeping is based on the content of the political speech that's being used to talk about the ballot initiative, that's where you run into a First Amendment problem under Grant. The standard is that the Attorney General has to determine whether it's fair and truthful. Yes. So if there's a review at all as to the substance, you say it's a violation of the First Amendment. So any summary you come up with under your theory would go to everybody to sign the petition and they would read the summary that this petition means this, even if it's not truthful at all. And you would allow that, is that right? I think this goes to strict scrutiny. So once we have a direct constraint on political speech, then we're applying strict scrutiny. I'd note that my friend has not even attempted to satisfy strict scrutiny. And that's because whatever compelling interest the government has in deterring election fraud, which I think, Your Honor, is where you're going, there's, right? So whatever interest, whatever. I thought your theory was, I thought you were coupling the Ohio standard of the Attorney General approving it without prompt judicial review. I thought that was your First Amendment argument. And I didn't know that you were focusing solely on the Attorney General's approval. I thought the two of them were coupled. Am I wrong on that? The availability of timely judicial review is one of the reasons that the summary provision is not narrowly tailored for strict scrutiny purposes. But another way it's not narrowly tailored, I think it's at Your Honor's concern, which is if they were attempting to address voter fraud, then you could have a provision where the Attorney General's review was limited to fraud. This court said in Susan B. Anthony List and also the Supreme Court in Alvarez that false speech is a much broader category than fraud. And certainly unfair speech goes even further than that. And when you have restraints on fraud, the Supreme Court has listed a number of requirements, including that the government make its case by clearing convincing evidence. That's the exact opposite of the standard review we have here. There's a mandamus action. But once you get into the Ohio Supreme Court, the burden is on the plaintiffs to show that there is clear and convincing evidence showing that the defendant, the Attorney General, was the one who abused its discretion. So- I thought for purposes of this appeal that you were conceding that the Attorney General had a valid basis under state law to keep the summary from going out. The question was whether or not you'd gotten sufficient expedited review. Because if you didn't concede that, you had an abstention problem. I thought that was the issue because you had a parallel proceeding in state court that was raising the same issue. And so you had to concede that point before us in order to get into federal court. So, Professor, I don't think that's right, Your Honor. Our First Amendment claim does not turn on the Attorney General being wrong about his fair and truthful determination. So you accept that he could be right, that you are making fraudulent statements in your summary? Not fraudulent. He has made a determination about, in his view, they are not fair and truthful. And so our point is, even if you credit his assertion that he views the summary as not fair and truthful, you still have a statutory scheme that sets up a ministry of truth for political speech. And it's hard to overstate how antithetical that is to the First Amendment. The whole point of the First Amendment is to foreclose the government from- It would be challenging that premise that he's made that it's fair and truthful in order to even be in court. That's not- Because that's the whole, the content argument turns on that, doesn't it? I don't think it does because, again, fraud is a small subset of false speech, and false speech is protected. Unfair speech is certainly protected. I mean, this is the stuff of nightmares for the founders, the idea that the government was going to get to decide whether political speech was unfair or not. So we're far beyond a provision that is narrowly tailored to address fraud. And even, the founders recognized that there was a downside to having false or unfair political speech circulating in public discourse, but they recognized that the downsides of allowing the government to make that determination and censor on that basis were far more severe. And so that's why we have the strict scrutiny applying to these circumstances. Mootness. Am I right in saying that you have to separate out the underlying request for final injunctive relief from the PI, the preliminary injunction in terms of mootness? Are we on the same page there? Sorry. In answering the mootness question, we have to look just at what is in front of us, which is a preliminary injunction appeal. That's right. In other words, we don't ask ourself whether the request for final injunctive relief in front of Judge Graham is still live. The question is whether the PI is live. Are we on the same page there? We are on the same page there. I understand. Then what is it in your PI request that talks about anything other than the July, November 2024 elections? So the preliminary injunction was an assertion of our as-applied challenge. So we're asking for specific relief. Great, great. What part of that goes beyond 24 is what I'm trying to figure out. It seemed all to be cabined by, I mean, obviously that's why it was a preliminary injunction. It was 24, so you're not asking for relief in 25. You're asking for relief because July's coming up and the November 24 election's coming up. So I'm trying to figure out why it's not moot. Right, and I think that goes to the emphasis on the lack of timely judicial review that we had in the spring, which again was a function of Schmidt where we had to distinguish this case from Schmidt. Obviously, we don't need to do that before this court. But I don't think that was- I'm not second-guessing your trial strategy. I mean, for all I know, it's the federal court's problem. I'm not blaming anyone. I'm just saying this election that the PI is targeted at is gonna be over by the time this decision comes out. And so I would have thought that the right answer here is that PI is moot, but that doesn't prohibit us from getting it back in front of Judge Graham and try to get this handled on a fairly expedited basis for 25. That's what I'm asking you. So I don't think the PI is moot because the relief we requested, which was the certification and forwarding of the March 2024 summary and proposed amendment is relief that this court could grant. We would be happy and thrilled to get- But we'd have to reform that, wouldn't we? Because you have a sentence in there that refers to January of 2025. I don't think you would have to do anything. It would then be our choice to decide whether to proceed with a proposed amendment that has a retroactive effective date. We'd have to look at state law and see what the impact of that is. So we mentioned that in our letter yesterday just because we wanted to be transparent that there was a wrinkle that the plaintiffs would have to deal with if the court were to enter that injunction. If there's an approval or if the preliminary injunction that the panel granted went into effect, then you could go through the mechanics of getting the ballot proposal on the books. And I'm not gonna be specific about all the ups and downs you have to go through, but then you would solicit and get 400,000 signatures. And then you would try to put that on the next election ballot, which could be November 2025. Yes, and that is precisely why the preliminary injunction motion is not moot. My time is up. Just to be clear about this, you could have asked for it that way. I mean, we have to take the P.I. as it's presented. You didn't say in the P.I., we want you to get this relief in 24. If it doesn't happen, certifications count for the next election, so please give it so we can get it for 25. You said we have an emergency. That's what P.I.s are about. This emergency relates to dates in March, July, November. And those dates will have come and gone. And I'm actually not even sure why you're prejudiced. As Judge Keflas pointed out, I'm not, the theory you're pushing hard here, I don't think you pushed. So it's funny to me that you want us to decide the case where you haven't argued your best argument. But go for it. So I wanted to be transparent about what I actually think about the mootness argument. As we said in our letter yesterday, the court thinks that because of the sequence and events, and in particular the fact that the en banc vacator of the injunction meant that we missed the November election and we don't object to the court dismissing the appeal on that ground and we will go back to the district court and try again. So I don't mean to be pushing too hard on that. I just, I don't think mootness is quite the right framework for thinking about that because the relief we requested in the preliminary injunction is relief that we could still obtain. As I said, if you were to order that we get to move forward with the March summary, we would be happy and grateful for that order. Moving forward means if you had to go back to square one, you've already done a seventh effort to get the Attorney General to approve your summary. Was that disapproved on the basis of the lack of a title? Yes, so we- And isn't there a new Ohio Supreme Court case saying that you don't need a title? So doesn't this show the futility of trying to get the Attorney General to approve any summary on this particular topic which has to do with abolishing qualified immunity, suggesting that perhaps there is a merits-based disagreement on the part of the Attorney General with the particulars of your proposal here? Yes, Your Honor, I agree with everything you said and I want to particularly emphasize that although our position does not turn on the, as I said, on the merits of the Ohio Attorney General's rejection letters, I do urge the court to look at them and get a sense of how capaciously he has interpreted the phrase fair and truthful. One of them he rejected because the proposed amendment said anybody one word, or two words, and the summary had anybody one word. The title that was rejected last March had been on four prior submissions and he had said nothing about it until the fifth submission and then knocked us down on that ground. But as you say, Judge Moore, the last thing I wanted to say before I sit down is there was a decision this morning from the Ohio Supreme Court in Dudley v. Yost. I don't know if you've had a chance to look at it yet, but it rejects the defendant's authority over the title of the proposed amendment and petition in that case. We'll certainly file a 28-J letter on that very soon, but it does go to the merits of the defendant. So you won that bout? That wasn't us, that was a different...  Yeah. But they did get Supreme Court review, which is what... Yes, and I'd note that it took nine months. They filed that mandamus action... We gotta get going. Let's finish this argument as fast as possible. Let's get going. I hear your opponent opposed accelerating the mandamus review of this very matter. Yes. So that... We do not have expedited reviews, so we can expect this is a very good data point that it would take nine months for us as well, which would then cause us to mix the next election. There's a lot of states that don't have citizen initiatives like Ohio, and you're not saying that there's a First Amendment right to have citizen initiatives, are you? Oh, certainly not. Ohio could just totally prohibit it, right? That is absolutely correct. I am saying only what the Supreme Court said in Grant and ACLF. Okay, so what makes this unconstitutional is that the Attorney General reviews it for truthfulness and fairness, and that somehow, I thought it was the lack of judicial review. I thought, reading your briefs, I thought that's what you argued, but now you're just saying that whatever initiative we want to put up is not reviewable, and it has to go on the ballot, I guess, if we get the signatures. I would say that the summary provision, and this is the argument we've made all along, although you're certainly correct that the absence of judicial review is a problem. The summary provision is unconstitutional because it directly constrains the proponent's political speech, and the Supreme Court held in Grant and ACLF that the First Amendment does apply to that, and it's subject to strict scrutiny. I have one additional tangential question. Are you required under state law to have a summary in order to present the petition to the voters? No, so under Ohio law, yes. Most states do not require a summary, and a couple of states that do have a summary that's written by the proponents, there is no pre-circulation review. Ohio is unique in that regard. Okay, thank you. Can I, I'm sorry. Go ahead. One question that's quicker. Are you arguing that, just so I understand what kind of First Amendment protection you're arguing that the summary gets, is that the same kind of protection that you would say a political pamphlet gets, or just kind of maybe what the circulator says to a potential signatory about why they should sign? Is there anything that distinguishes this that maybe it's attached to the petition or things like that, that we think maybe not that it's government speech itself, but that maybe it's in a different kind of area of exacting scrutiny as opposed to kind of a fatal in fact strict scrutiny? No, I would say all of the examples you gave are examples of political speech about a proposed electoral change, and so those are all subject to strict scrutiny under grant. And petitions themselves are private speech. A governmental petition would be an oxymoron. The whole point of the process is for private citizens to work with other private citizens without government intermediaries. Do you think at least, so the petition itself under state law has to include the caveat that the Attorney General has reviewed the summary and has found it truthful and fair? Would you at least agree that that is the Attorney General's speech? That's his actual certification on it? On the petition itself under state law. The way I understand state law is you have the little thing that says initial petition. It's all formally, the requirements are clear. Then you have the summary, and then right after the summary, state law requires the AG in the petition that you are taking around and getting signatures a statement from the AG that says this is, the AG finds this to be fair and truthful. So 351905 states that the Attorney General has to certify, it doesn't say what sort of language he needs. And then that certification goes on the petition. Right, it just says certification. He gets to choose what language. Okay, well then he puts the language on the petition. So I'm curious, so I don't think a political pamphlet has government approved language on it. Doesn't that suggest at least that this is government speech is the first question. And then the second question is, what would an injunction look like here? Because an injunction and joining that process, would the petition just exclude that language? Or could we grant an injunction that with the caveat that this is being circulated under the First Amendment, but the Attorney General has found it untruthful and unfair? Yes, okay, so to answer the first question, the Supreme Court held in Mattel v. Tam that the government cannot turn private speech into government speech by subjecting it to a seal of approval. So that's essentially what that certification is, a seal of approval. So I think that that theory is off the table under Supreme Court precedent. On the second question, what you would be doing is excising from 3519-01, the language having to do with the summary examination. So what it would say is, the Attorney General shall certify and then forward the submitted petition to the Ohio ballot board for approval. So it could just be- But then you would also excise, I think the provision that actually says the attorney's certification has to be on the petition is in a different section. Right, it's in 05. And you would excise that too? So you could excise that. I think what you could also do, the Attorney General gets to determine what certification means, that that provision doesn't require any specific language. So I think he could certainly do, if it wasn't excised, he could say, I certify under 35, I certify this petition under 3519-01 pursuant to the Sixth Circuit's decision in Brown v. Yost. I am not determining whether it is fair or truthful. Something along those lines. So we would be compelling him to speak then? So we would be violating his version of it, right? It would really be up to him, right? This court's authority is only to decide whether or not the provision is constitutional. Could I just, just to finish my answer to Judge Bloom-Katz, because I think one important note about the petition, the petition itself is private speech, but I don't mean to suggest that all kind of constraints on the subject matter of the proposed initiative itself are government speech, right? That the proposed amendment is on the petition. The reason that single subject rules or subject matter restrictions are permissible with respect to the amendment itself that's been articulated by the D.C. Circuit and the Tenth Circuit is that the proposed amendment is legislative speech. So under those decisions, states are free to say, well, we're only going to allow ballot initiatives on these certain subjects. And so that's a different question than when you're talking about the summary, which is private speech. It doesn't have any electoral consequences. And so I would just distinguish between those. Okay, thank you. We'll hear from the state. Good afternoon. Good afternoon, Chief Judge Sutton, and may it please the court. I'm Elliot Geiser on behalf of the Attorney General. There are many reasons that this court should rule on behalf of the state, but the most important one is that the First Amendment does not constrain the state legislative process, and the founders would never countenance subjecting the state legislative processes to Article III courts for a state legislative process. Free floating review as to whether or not that entire process even gets into the First Amendment. Well, this isn't about the entire process. It's not about the requirements to get an initiative on the ballot, the number of days before that you have to get everything finalized, or the number of signatures, all those kind of structural requirements for actual ballot access. That's not at issue here. What is at issue here, it seems, and I'm giving you the chance to tell me I'm wrong, is actually a direct restraint on their ability to share a particular political message with fellow citizens in order to, as Grant put it, which is interactive communication concerning political change. So that seems different than all the requirements for getting on the ballot. This is a restraint on speech itself. And so why, preservation issues aside- We agree there are preservation issues. In this particular appeal, why isn't that something that implicates or that requires traditional First Amendment scrutiny? It doesn't, and I'll give you two reasons, Your Honor. First of all, there is a meaningful distinction in the Grant line of cases and then in the history about the First Amendment on this between the live ammunition of the arsenal of democracy, things like ballots, official petitions, and the speech of the circulator, the speech of the pamphleteer. And I think that this easily falls on the side of government speech. If you look at all the cases that the Supreme Court has held about this. Start with Rust versus Sullivan and move all the way through the Shirtlift decision. Rust was a- Government speech, the cases I've seen, basically if the government writes it soup to nuts, it's government speech. And whereas if they're, this looks more like government regulation of speech than government speech. They're approving or disapproving as the case might be a particular summary, but they're not writing the words in the way that the Supreme Court cases about government speech and certainly our cases seem to. Well, so I disagree with that on that point. So first of all, there are three factors that the court looks at. Effective control by the government, the history of the instrument, and then the reasonable observer. So you look at all three of those factors to conclude whether it's government speech. So the government has total control over this process. Look at section 3519.05. It ministers, oh, sorry, Your Honor. Well, I mean, I don't want to belay, I don't want to just kneecap you right off the bat, but I mean, the idea that the government can constitutionally have total control over this is one I'd push back on a bit. You can review under these, frankly, very vague standards, which are always conducive to executives doing what they want. But they get to review for whether it's fair and truthful. I mean, that's not total control. And that might actually be pretty tightly constrained if we say that what they're reviewing under those standards is political speech. Well, so consider the other factors there, Your Honor. I would push back that this is private speech at all. This is part of the legislative process. So, I mean, when the voter looks at this, what do they see? They see a first, they see a felony warning before they can sign it, right? That doesn't look like the private speech of the pamphleteer. I don't know of no pamphlets that say, if you sign here and you're not authorized to do that, you're subject to a fifth degree felony. And then you see the attorney general's name underneath that certification. And then you have, in addition to that, this is actually some, you know, it's not like a change.org petition or someone with just a clipboard. This actually has live legal effect in the world. And so- That's the point, right? But that's legislation, Your Honor. So it's no different than I would suggest, like, look at the legislative rules in the Ohio General Assembly, so. I mean, this is citizens talk. I'm gonna let you go. I mean, you know, I understand your argument, but this is citizens talking to citizens, except that the attorney general is saying you can't say these words for the particular reasons he's given in this case, which are another kettle of fish. I understand your argument, but- And the attorney general is saying this repeatedly to the same people who want to put, or want to at least try to get 400,000 signatures on their proposal. And in effect, over a two-year period, and the amicus brief lists these various efforts by your opponents to get this language accepted by the attorney general so that they can just go forward to get 400,000 people to sign onto this so that then the citizens of Ohio can vote for this. And yet the attorney general has been stopping this repeatedly for one, may I say, picayune reason after another. Well, we disagree with your honor that this is picayune reasons.  The attorney general reviews this, and it's not like a governor's veto, but it could be. Under the legislative process, you don't even get into content-based discussion. That's what level of scrutiny you need to do. So am I understanding you're saying that the AG does get a veto here, that he could just- No, your honor. What he- You know, if he didn't like the ballot committee or what they were doing, he could just decide over and over and over to pick out different things so they could never get on the ballot? No, your honor. What the attorney general's role here is, is modest. It's as Judge Griffith said, just determine whether or not this is fair and truthful. We disagree that it's picayune. But what I'm saying is the First Amendment, if Ohio's constitution gave the attorney general a governor's-like veto over anything, to say you can't go to the voters at all with this because I don't like it, that still wouldn't be a First Amendment violation because this is the legislative process. You never even get to content analysis to whether or not this is private speech because the live arsenal ammo of democracy, the live weapon that is the ballot initiative with a felony warning on it, when it goes to voters, they're going to look at that and say, this is a government document. It's not a public forum. It's the government communicating with me that if I sign this, I am acting as a legislator. And look at Doe versus Reed, which is where the Supreme Court said when citizens, electors who are eligible to vote, sign a petition, they're acting like members of the Ohio House of Representatives agreeing to co-sponsor a bill. And so if- If you use the summary of the petition in that way, what are the limitations on the Attorney General's ability to approve or not approve? The limitations are Ohio law. Ohio law gives him a ministerial war. If the First Amendment has nothing to say about it, the Attorney General could be content biased, viewpoint biased, all of those things. So- The First Amendment will have nothing to do with it. Is that your position? If this court holds that the Attorney General's constrained- And if it is, is that your position? I'm gonna answer your question here. If this court holds that what the Attorney General here is subject to the First Amendment, there's no reason in principle that the governor could not be sued by a member of the General Assembly for exercising the veto 10 times or seven times over- So this is not the arrangement Ohio chose to enact. It's not a veto arrangement. And so that doesn't seem to follow. I mean, what seems to be the case is that there isn't a constitutional right to have ballot initiatives, and ergo there isn't a constitutional right to engage in speech-related thereto when you can't get something on the ballot to begin with. But where you do set up a structure where you can get something on the ballot and you can interact with citizens and share a particular message and try to get their signature, as opposed to something that it looks more like actions of an actual legislature. If there's a role for speech in getting it on there, then the First Amendment would apply to that. And it's not like the governor doing a veto. Well, Your Honor, I think that we're just going to have to look at this through the lens of the precedent that we have. And this looks like a government document to the ordinary citizen. As far as history goes- How do we know that? I mean, it's somebody with a clipboard who obviously is an activist for a cause. I mean, I go to work in Ann Arbor. Believe me, this is not an alien concept to me.  And I mean, you know, I think that they're trying to- They are engaged in persuasion, or at least attempted persuasion. And they're trying to, you know, and this is part of it. Well, so, Your Honor, the part that's certified by the Attorney General is not the private speech of the person with the clipboard. And I don't think the average observer would look at it that way. And historically speaking, when you see a felony warning before you sign, do you think that that is the petitioner saying, and by the way, I'm warning you that I will prosecute you? No, it's someone behind the petition is speaking. Would you agree at least that if the Attorney General tried to regulate that private speech, that that would trigger strict scrutiny? So this is about what's on the form. Yes. What if they had political pamphlets that they themselves, private political pamphlets, and they said, would you sign this? And they're, I'm in a hurry. Well, take this pamphlet and I'll talk to you. And that was their private created speech. Yes. And the government or the AG is like, no, that private speech is also false. I'm gonna prosecute you for that. That would not be constitutional, Your Honor. You would say that that is subject to strict scrutiny. And it's mere fact that it's the form itself. And you cannot regulate anything else they say about the form. You can only regulate the form itself. That's correct, Your Honor. We think the grant draws that line between private speech on the one hand and the legislative process. And so a legislator, my friends use in their reply brief a really great example. They say, this is like stopping us from having a press conference on the state house steps. That's exactly the opposite. They can have the press conference they want. We're just saying in the legislative chamber itself, the legislative power of the state, once you're on that form that is like a bill, it's essentially a bill, you no longer have a private speech interest. Now to get on there, this is not an onerous burden. And so if the court is gonna apply any form of First Amendment analysis, it should follow Smith versus LaRose and do Anderson Burdick here. It's a modest hurdle. You want us to do Anderson Burdick? I don't. I think what the court should do here is make clear once and for all, so we're not back here again on Thompson, DeWine, one, two, three, again and again, that when it comes to the legislative process, the First Amendment isn't part of the conversation. And then the question becomes is this. Anderson Burdick is your backup argument. Just make sure you're responding to his point. And so back to Judge Blumkatz's question, the Attorney General can, the First Amendment imposes no restraints on what he can say is fair or unfair. And what we've seen here, the seven decisions and titles and so on, that can go on ad infinitum and they can never present their summary to anybody in a sidewalk and get this thing going because it's just not subject to the First Amendment. It's not a federal case, Your Honor. It's a state case. So it's not subject to the First Amendment. Correct, yes. We are, that's our argument. So you're endorsing then that a hypothetical Attorney General can be very much against a particular initiative effort and have that biased reason working to defeat the ability to bring that initiative to the people of the state of Ohio? No, that would violate state law, Your Honor. Under the First Amendment, you're saying there's no federal kind of... Yes, that's correct. Yeah, the First Amendment just doesn't apply to this because look at the history that Judge Bumate in his dissent from rehearing on Bonk. I think this court has a golden opportunity to revisit that history and make clear that when the people act through direct democracy, they are, as Arizona State Legislature says, acting as legislators. They are not acting as private citizens when they act as a... That's when they vote, not necessarily when they sign. Well, when they sign, that's what Dover's is... Caveats left and right, but I'm not talking about restraints on political speech in circulating petitions. I mean, he says that throughout there. He's talking about like what Judge McConnell talks about, I think in Walker, which is just these structural requirements that aren't speech themselves. You gotta get a certain number of signatures certain days ahead of time, et cetera. That's different than saying you can't talk to these people and say this thing as a summary of what you want them to sign a petition for. Well, so again, that comes back down to, I think what is sort of an intractable disagreement about whether this is private speech or not. But I think that then there are basically two different points. One is endorse that Anderson-Burdick balancing ballot access rules, that doesn't apply to neutral procedures. And then consider whether this is a neutral procedure. And we think that this is a neutral procedure. This is not an infringement on private speech at all. You never even get to content analysis because it's on the neutral procedure side. And if that's what the dispute is at the preliminary injunction stage about, how is it a neutral procedure when let's say it's a pro-choice AG who is just gonna exercise plenary discretion to reject on these sorts of grounds every summary for a pro-life ballot initiative. Now I know there might be a state law problem with that, but so far as the First Amendment goes, you're saying that's a neutral procedure that the AG is doing this? So as far as the First Amendment is concerned, it's our position that this is like the legislative process. It would be no different than if the committee chairman of the House Ways and Means Committee just said, we're not doing anything with cigarettes. Anything you bring to cigarettes tabled instantly. Would they have a First Amendment case? No, if you think about it like that. And the reason I wanted to bring up Ohio House of Representatives Rule 62, because the Attorney General operates with respect to the whole of the people in Ohio, much like this rule operates. It says, when a bill has been considered the first time, it shall be referred to the Rules and Reference Committee, which shall consider the same and report its recommendation to the House. If it be apparent to said committee that any bill is of a frivolous nature, that it was not introduced in good faith, that is in conflict with or duplication of an existing statute without making proper position for the repeal or amendment of such existing statute, said committee shall report said bill back to the House for its return to the author with a notation thereon for the reason of its return. They have to look at the content of the bill. The bill is obviously something that the legislature has private speech interests in advocating, much like plaintiffs here have private speech interests in advocating for change however they want to, but the Rules Committee is not doing anything that the First Amendment has anything to say about. The legislature is a part of government. The people are the legislature here. Interest in anything. I mean, there's just a world of difference between legislators doing stuff and citizens. Can we talk about standing? Yes. In your view, is there a lack of standing in this case? And if so, why? Well, so, your honor, there's been some slipperiness to my friends on the other side's actual allegations. If their claim is that the lack of judicial review, if that's what's presented, that's what they articulated. I actually thought that was the claim. I did too. I think I read the briefs last night and I thought that's what they were arguing. So I'm a little surprised that the- Me too, your honor. Maybe all of that suggests we should decide this is moot and we can send it back to the district court. I know these arguments were not presented to Judge Graham. I know the same theory was not presented exactly to Judge Graham. And I know nothing in this case can affect things before 2025, November. We can agree to expedite everything and we'll embank it the next time around. But why, as a vehicle matter, why would we want to do this through the lens of a PI? It doesn't make any sense. Your honor, I think you do raise a good point. Now, in our letter in candor and sort of as a statement against interest, we think that there is some effectual relief if you squint and read generously what they say. Well, can you just help me with the squinting? Because I can't see it. How do you squint? I thought everything in the PI is about 24. I do get the point that once you're certified, it lasts for future elections. I got that point. But, you know, the plaintiff's the master of their preliminary injunction. And if they decide to say, rush, rush, rush, March, July, November of 24, nothing about the future, then we just take it as it comes to us. And once those dates go by, we, you know, and in this case, I just don't even see the harm. I kind of see it as a benefit to everybody. Well, so I think that as far as, you know, prudential remand, I don't think we should go for. If the court is going to go down the mootness route, I think that you have to look at- That's what I'm asking you about, mootness. Yeah, I mean, I think as far as the November 2024 election, which is in six days, absolutely nothing that this court can do for them that would give them effectual relief on that. But because these summaries last forever, you know, we had to represent that we think that there's still something like at least a peppercorn if the court sets aside all the merits and goes that direction. Now, I don't- That's why their permanent injunction is not moot. That's not why the PI, as they framed it, right? It's how they framed it. They can say what they want. They can say as maybe they wish they said. And by the way, we not only want preliminary relief because of the November 24 election, if that doesn't work out, the certification will count for 25. They didn't say that. No, they didn't say that below, Your Honor. And if that's enough to moot this particular case, then the state should win for that reason, too, as well as sovereign immunity, which we haven't gotten into. I'm inclined to agree with the Chief on mootness, but can you talk about standing, too? That was my question. Oh, yeah, I'm sorry. I lost it. So traceability, they didn't sue the right people if their injury is lack of expedited review. The Supreme Court of Ohio is not controlled by the Attorney General. And while we do think that that review is meaningful and they control their docket how they like, if that's their First Amendment claim, then there's no standing to press that claim. And are they challenging anything about the procedure that the Supreme Court engages in other than the timing for the appeal? That's all they argued, yeah. They're not claiming that the Supreme Court has some sort of ulterior bad motive like they perhaps are arguing the AG has. Yeah, I mean, I don't think that they've made any claim about the motives of the justices of that. Ultimately, isn't the question here whether it's fair and reasonable for the Ohio Supreme Court? Yes. That's the issue. And that's where the traceability would have to. Well, I mean, you're completely right, Your Honor. I mean, they're trying to make a federal case and federalize what is a state law argument here. I mean- I'm curious why you opposed expediting the mandamus action in the Ohio Supreme Court in this case. Well, the reasons are laid out in our brief. It was not- Please tell them to us. Yes, because you can roll a ballot initiative over from one election to another. It is not an emergency. And also it would be prejudicial to the Attorney General. We argued to expedite every election case in 2024 when we have so many other things going on. And those are the arguments that we laid out. And that was what the Ohio Supreme Court heard and agreed with. I do want to mention briefly that sovereign immunity bars the retroactiveness of the preliminary injunction. So that's not a mootness question, but the only thing that they've asked for here is a sovereign immunity problem. They can't- The S&M Brands case is the clearest and easiest to look at. There's a completed past discreet decision by an executive branch official who has no continuing enforcement authority. So this is nothing like Flint Water or Bowler. And we're very- May I ask you, what is the order of operation between standing mootness and sovereign immunity? I assume sovereign immunity can be waived. So it's third. And then as between standing and mootness, either one. Yeah, I think probably standing or mootness both turn on Article III concerns. I would say standing mootness, sovereign immunity is the order. Now, this is a likelihood of success on the merits. That's not jurisdictionally required, right? No, I'm not saying- Jurisdictional impediment that's easiest. It's like Pearson and qualified immunity. Yes, yeah. So you can go for, if there are three jurisdictional problems, all of them are jurisdictional. They come before merits. But you can take them in that order, whatever order I think the court finds to be most salient. I mean, whether they were standing in the first instance affects the mootness inquiry because the window, I mean, that's a tougher standard to meet, that it's moot when there had been standing earlier. That's right. And our standing argument, as they've evolved through the papers, we said, well, if they're entitled under sovereign immunity to the kind of injunction that they want, maybe that does give them standing on some level. But if the problem is that with the Ohio Supreme Court, there's no standing for that. And so that's one reason why this is kind of an issue spotter. Is it de novo review by the Ohio Supreme Court of the AG's determination? So it's abuse of discretion with de novo for questions of law. So the Dudley decision, which just came down this morning as I was on my way over to court, looks at whether or not the statute authorizes the attorney general to review the title as part of reviewing the summary. And they make a conclusion that was, no, you can't review the title as part of that. That was under the de novo standard. Now- Was that the reason for throwing out one of these summaries? That was not one of the ones before this court. The eighth summary, Your Honor, did not have a title at all. Was that the only reason? Yeah, that was the only reason that AG offered. So does that mean then that the eighth petition should be signed by the attorney general? No, it does not. Because what the Ohio Supreme Court said this morning, and I'm sure the 28-J letter is coming, is because the attorney general in all of his letters reserves that he hasn't reviewed the balance of the summary, they said, well, he hasn't reviewed the balance of the summary. So they sent it back to the attorney general to review it. Does it have to be a ninth one, if not a tenth one, and so forth? Well, in order for this case to continue- Notwithstanding that the Ohio Supreme Court has explicitly rejected one of your- One of the bases in a different case. Yes, one of the different- So the title review was the basis for the eighth decision, not the seventh decision, which is the decision that they're asking for an injunction for right here. One quick question.  The seventh rejection, where he says the title protecting constitutional rights or whatever is misleading, because when you're abrogating qualified immunity and allowing somebody to recover damages for some past action, it's not providing prospective protection. That was one of the statements, yes. Why isn't that a difference of opinion about what protection comprises that would be based on viewpoint? I mean, if the SEC fines somebody $50 million, fines them, based on a past violation, I think you could make a pretty good argument that it's going to deter similar violations in the future and thereby protect the interests of investors. I mean, maybe there's a retributive aspect to these damage awards, or compensatory, but isn't part of what that damage award does is it prevents future violations, and therefore there's protection? I'm just, I mean, right or wrong, isn't that just a difference of opinion that ultimately rests on viewpoint, rather than sort of truth or fairness or something? So it's not before this court whether the attorney general was reasonable or exercised his fair and truthful review correctly under the law. And isn't that viewpoint, though? He has a different viewpoint about protection than they do. Well, so my only answer, and I don't want to just keep going around the circle, is if the governor vetoes a bill, right? So that's your, I mean, you don't have a, OK. If you get to content-based analysis, then we're down the wrong decision tree. It's not really that, OK, it is OK under that analysis. It's just that analysis is inappropriate. Well, so that's my first answer. My second answer, we haven't briefed this editorial control argument because it's new. But we could make arguments about strict scrutiny. But my first answer, and what I'm hoping this court will hold, is this is on the legislative process side, just as Reconstruction-era constitutions allowed the General Assemblies of Georgia and Mississippi and Alabama, the constitutions written by the North, to just say, the ballot initiative you got, I don't like it. And it's gone. I appreciate your answers. Yes? When you say you haven't briefed strict scrutiny, given that the panel applied strict scrutiny, isn't it a little bit late in the game to say, now you're going to brief strict scrutiny? Well, so my understanding of the panel's decision was that it applied this angle, sort of Grant-Meyer. We disagreed with the panel's decision about this. But Grant, strict scrutiny is different from editorial control, viewpoint discrimination in a legislative document. That's a different claim than what the panel held here. OK. Thanks very much, Mr. Geiser. Appreciate your answering our questions. Thank you. We urge the court to affirm. Thank you. Ms. Corcoran, you've got some rebuttal here. To begin with the issue of standing, the injury here is the defendant's reliance on the summary provision to editorially control the plaintiff's political speech and to block them from engaging in petition circulation. That's traceable to the defendant, because he is the one who did that. And it's redressable by an injunction that prohibits the defendant from enforcing the summary provision. What about under the original complaint, though? The original pleading? The original. So what's the standing theory under the original complaint? The complaint and the preliminary injunction both make the argument, or the claim is, that the defendant's enforcement of the summary provision violates the First Amendment. Without anything having to do with the judicial review provision? The judicial review is one of the reasons that the summary provision is not narrowly tailored. Why are both counts? Am I missing something? Yes. And the reason that the judicial review piece of it is emphasized is, again, because of Schmidt. It's a reason that the provision is not narrowly tailored. And if the court only wants to reach that reason, it can. There are other reasons that it's not narrowly tailored. So I don't think we have a standing problem here. I just identified injury, redressability, and traceability. On strict scrutiny, we are using- One quick question. You mentioned before, single subject and other requirements. Those don't enter into the summary at all. So when the attorney general is looking at a summary, he couldn't say, I need to tell you, that's going to violate the single subject rule. He couldn't do that at that point? He would just approve the summary, and then later on, you wouldn't let it go on the ballot because of single subject? That's correct, because of the way that the Ohio legislature and the Constitution set up the review. So it requires you to approve the summary or deal with the summary, even if there's an obvious deficiency in the proposal. That's the way that the Ohio legislature set up 351901. The attorney general. Does the ballot board approve, have to decide whether it's a single subject or not? Right. The ballot board then applies the single subject rule. Again, as I was saying earlier, that goes to the actual proposed amendment, which is legislative spleech, which I think gets to the merits of the First Amendment issue. I understand my friend's position today before this court all comes down to whether or not citizen petitions or government speech, every one of his arguments was about that. The Supreme Court has rejected his position. The Supreme Court held in Doe v. Reed and Grant and ACLF that petition circulation. In Arizona, they said initiatives are legislation. I don't think ballot initiatives, I don't think that's right. I mean, Doe v. Reed says that petitions have the legal effect once someone signs it, but the petitions themselves are not government speech. I have not heard my friend rely on that case and he's not pushed back on the fact that these other cases. Part of it is this just wasn't presented a lot. It seems like it wasn't presented to the district court. And these issues, these are serious issues that could be briefed a whole lot more fully than they are as this is before us at the moment. That could be right, Your Honor. But I want to make clear that this idea that citizen speech is not something for this court to decide. That ship sailed a long time ago. Can I ask you a variation of what Judge Murphy asked earlier, which is instead of having the legislature do it, if the AG had vetoed at the end of this process, so you put together the petition, you put together a summary, you got 400,000 signatures. Could he just veto it? Would you have your right to petition, you'd have your right to circulate, all that stuff. But at the end, he just says no. So putting aside the Ohio Constitution and the statutory right, that's how they had set it up. Same thing. That would be about ballot access. That would be an entirely different issue. It wouldn't be a-  Well, that would get to the Anderson-Burdick split. Some courts would say you would apply Anderson-Burdick to that because of the implications for actually getting statewide discussion of the issue. Other circuits would say you don't apply Anderson-Burdick because that's just a constraint on the ballot process itself. Those cases are separate from what we have here, where we're talking about political speech. If I could quickly get to my friend's assertion that his review is modest, again, I would urge the court to look at the rejection letters. They're all on the Attorney General's website. Some of the links were broken as of yesterday, but my friend has assured me they're fixed today. Because it's important to understand how capaciously he has exercised his authority under this provision. And to get to Judge Moore's point earlier, what you'll see is a Kafka-esque loop, where each time he identifies some new omission, some word that was in the summary or that was in the proposed amendment and isn't in the summary, at the end of each letter, he says, I'm not telling you all of the omissions I object to. You'll have to try again, and maybe I'll identify some more. So they go back. They change the things he requested. They come back to him. He again identifies something that he didn't identify before. They have to go back and get another 1,000 signatures. And this has been going on for three years. If it went on for 100, you would say everything in it was Yoast speech. Right? Yeah, at some point, right. At some point, you would have to call the Attorney General. And I do want to say, I want to clear up, I said earlier, there are no states that have this sort of process. There are a handful of states that have government-written summaries that are put onto petitions. I think that raises a different question. It's less restrictive than what you have here, because at least then, you're not blocking the petition process. The petitioner can go forward and get the signatures. But it also raises different questions. Compelled speech is under a different framework. OK, thank you very much. Both of you, excellent briefs, argument. We really appreciate it. The case will be submitted.